# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

MARY K. COOK                                            PETITIONER

v.                                            NO. 3:07-CV-P247-S

HENRIETTA CREWS, WARDEN                      RESPONDENT

## MEMORANDUM OPINION

Petitioner, Mary K. Cook, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner claims her trial counsel provided ineffective assistance in violation of the Sixth Amendment to the U.S. Constitution. Respondent, Henrietta Crews, Warden, moves to dismiss the petition. For reasons stated below, the Court will dismiss the petition on the merits.

### I.

A jury found Petitioner guilty of complicity to murder, and in conformance with the jury's recommendation, Petitioner is serving a life sentence without the possibility of parole or probation for twenty-five years. In an opinion affirming the conviction,[1] the Supreme Court of Kentucky summarized the facts of the case as follows:

\*\*\*\*\*\*\*\*\*\*

[Petitioner] Cook was indicted for complicity to commit murder after her "lover," England, killed her husband. After England pled guilty to murder and was sentenced to life without the possibility of probation or parole for twenty-five years, he testified against Cook at her trial. According to England, Cook asked him if he would kill her husband in exchange for being with her as well as for $4000 and a Mustang automobile.

---

[1] Appendix, Document 12-11 at pp. 1-3.

The money apparently was to come from the $15,000 life insurance policy Cook had on her husband as part of her employment benefit package and the automobile was recently purchased by the couple. England initially rejected the deal, but Cook brought up the subject again and he finally agreed to do it. The plan at that time was for England to murder the victim at work when he took out the trash at night.

England testified that Cook cashed a check and gave him the money to buy the murder weapon, a knife. She also advised him that she had some gloves for him to wear. The original murder plan changed at some point because Cook informed England that the victim was no longer taking out the trash at work. She told him that her husband had to be killed as soon as possible and he again agreed to do it.

On the night in question, Cook went to England's home, where he lived with his "common law wife," supposedly to play cards. Cook and the "common law wife" were apparently friends since grade school and the two couples socialized with each other. Meanwhile, England went to Cook's home, a place where he was a frequent visitor, and waited for the victim to get home from work. He drank approximately eight beers while he was there. Cook called him at one point and asked "if it was done yet," and England told her no, that the victim was asleep. Cook stated that was "even better," and hung up the telephone. Shortly thereafter, England entered the victim's bedroom and stabbed him to death with a knife.

When questioned by the police that morning, England first claimed that he and the victim were attacked by an intruder. However, after police recovered the murder weapon and the gloves and presented that information to England, he confessed to the killing and

the plot.

Cook testified in her own defense and admitted a sexual relationship with England. She also admitted telling the police she had discussed killing her husband with England, but at trial she stated the discussion had been "hypothetical." Cook acknowledged that after her husband was killed, the insurance company paid off their trailer. She otherwise denied involvement.

**********

The jury also found Petitioner to be a violent offender and specifically found that Petitioner committed the offense of complicity to murder for the purpose of receiving money or any other thing of value, or for other profit.[2]

Petitioner seeks federal relief after having been denied relief in state court on a direct appeal and on collateral review.

**II.**

**A. Standard of Review**

The federal habeas statute, as amended in the Antiterrorism and Effective Death Penalty Act of 1996, provides relief from a state conviction if the petition satisfies one of the following conditions:

> ... the [state court's] adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the

---

[2] Respondent's Memorandum (Document 12-2) at pp. 1-2.

3

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This statute further provides that state court determinations of fact are presumed to be correct. § 2254(e)(1).

When, as here, the state court articulates the correct legal rule in its review of a claim, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams (Terry) v. Taylor*, 529 U.S. 362, 411 (2000).

In the same vein, a federal habeas court may not substitute its evaluation of the state evidentiary record for that of the state trial court unless the state determination is unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 976 (2006) (stating, "Reasonable minds reviewing the record might disagree ... but on habeas review that does not suffice to supercede the trial court's credibility determination.").

**B. Ineffective Assistance of Counsel**

Petitioner advances six claims of ineffective assistance of counsel in support of this petition. Petitioner must show not only that counsel's performance was deficient but also that the deficiency prejudiced the defense to such a degree that the trial result is unreliable or considered to be unfair. *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Wiggins v. Smith*, 539 U.S. 510 (2003); *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). Federal habeas review of these claims requires a determination whether the state court's application *Strickland* was unreasonable. *See Wiggins*, 539 U.S. at 510; *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).

**1. Venue and Voir Dire**

Petitioner alleges trial counsel was ineffective because counsel failed to request a change of venue on the basis of pre-trial publicity or to explore in voir dire the victim's family relationships with judges, police officers, and jailers in the small community of Radcliff, Kentucky. The Kentucky Court of Appeals found no support for these contentions in the record. When questioned, no one in the venire panel had any pre-trial knowledge of the case or any relationship with the victim's family.

It is well settled that pretrial publicity rarely impinges on a defendant's right to a fair and impartial jury. *See Irvin v. Dowd*, 366 U.S. 717 (1961); *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998) (en banc). Due process is satisfied as long as the trial court conducts sufficient voir dire to determine whether prospective jurors are able to serve impartially. *Id.* Thus, the Court concludes the state court reasonably determined that trial counsel's performance was neither deficient nor prejudicial to Petitioner's defense.

**2. Suppression Motion**

At a scheduled hearing on a motion to suppress, trial counsel withdrew the motion citing trial strategy and specifically the decision to present Petitioner's testimony at trial in her own defense. Petitioner in fact testified at trial. Nevertheless, Petitioner argues the decision to withdraw the suppression motion constituted ineffective assistance. The Kentucky Court of Appeals disagreed and specifically found that counsel's decision was reasonable trial strategy that is not susceptible to second guessing on collateral review. Respondent further argues that even suppressed statements are admissible at trial during cross-examination of a defendant. *See Harris v. New York*, 401 U.S. 222, 225-26 (1971). The Court agrees and concludes this claim is

wholly without merit.

### 3. Jury Instructions

Petitioner's trial counsel affirmatively stated at trial that the defense did not seek jury instructions on any lesser included offenses because "this was an all or nothing case."[3] Petitioner now claims counsel's failure to seek an instruction for facilitation – reflecting a mental state of one who is "wholly indifferent" – constituted deficient performance. On appeal, the Supreme Court of Kentucky considered whether the trial judge erred in omitting a facilitation instruction. The high court found that the evidence did not support such an instruction; instead, "the evidence clearly demonstrated that, far from being a detached observer, Cook's intention was to receive monetary benefits from causing the victim's death.[4] For these reasons, the Kentucky Court of Appeals held on collateral review that counsel's failure to request an instruction did not constitute deficient performance. The Court agrees Petitioner fails to show counsel's performance was deficient and concludes this claim is wholly without merit.

### 4. Admission of Police Opinions

The jury received into evidence a videotaped statement of Petitioner on the day of her arrest. Therein, police interrogators give opinions essentially stating that Petitioner's version was not truthful and that the co-defendant's confession was credible. Defense counsel failed to object to the admissibility of these statements. The Supreme Court of Kentucky upheld the admissibility of such opinions as reasonable interrogation strategy. Because no error of state law occurred, the Kentucky Court of Appeals rejected the claim that defense counsel's performance

---

[3] Appendix, Document 12-11 at p. 8 (internal quotations omitted).

[4] *Id.*

was deficient.

The Court concludes this claim is completely without merit.  Again, *Strickland* "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment ... and that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Ross v. United States*, 339 F.3d 483 (6th Cir. 2003).  The Supreme Court of the United States cautions "that a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell v. Cone*, 535 U.S. at 702.

### 5.  Failure to Impeach Co-Defendant's Testimony

The petition contains no specific allegations; it merely states that counsel failed to impeach the alleged accomplice's testimony.[5]  The Court concludes this claim fails to allege sufficient grounds and facts in support of habeas relief, in conformance with Rule 2 of the Rules Governing § 2254 Cases.  28 U.S.C.A. following § 2254.  Although a federal court holds *pro se* pleadings to a less stringent standard than formal pleadings drafted by lawyers, the district court is under no duty to conjure up unpled allegations.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  The petition simply contains insufficient allegations of this claim to satisfy either condition set forth in § 2254(d).

---

[5]The state court opinions offer no guidance to the Court on the specifics of this claim; rather, on collateral review the Kentucky Court of Appeals rejected a related claim that counsel failed to object to the prosecution's improper bolstering of the co-defendant's testimony. (Appendix, Document 12-19 at p. 11.)  Because the impeachment claim in this federal petition was not presented on state review, Respondent seeks dismissal on the basis of procedural default.  The Court concludes, however, that analysis of the procedural default defense is not necessary because this claim, containing only the conclusory allegation, plainly lacks merit.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

**6. Misinformation of Minimum Parole Eligibility Requirements**

During the penalty phase, defense counsel argued incorrect parole eligibility requirements, which led the jury to believe that a term of fifty years, for example, would permit parole after forty-two years, when in fact parole eligibility would occur at twenty years. The incorrect information arose from the testimony of a probation and parole officer called by the prosecution. Petitioner claims counsel's failure to correct this testimony constitutes ineffective assistance of counsel. The Supreme Court of Kentucky rejected the claim that the misinformation resulted in manifest injustice. The high court reasoned that the jury recommended a clear sentence that Petitioner eligibility for parole occur after twenty-five years. On collateral review, the Kentucky Court of Appeals held that the absence of prejudice to the defendant's case failed to satisfy *Strickland's* two-part test. This Court agrees and concludes this claim is wholly without merit.

### III.

The Court concludes the conviction should stand because the claims in this petition fail to meet either criterion set forth in § 2254(d). The Court will dismiss this petition by separate order.

### IV. CERTIFICATE OF APPEALABILITY

Finally, the Court must determine whether a certification of appealability should issue. A district court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, the petitioner must demonstrate that reasonable jurists would find the district court's assessment

8

of his claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

      The Court is persuaded that reasonable jurists would not find debatable or wrong the correctness of the assessments made in this Memorandum Opinion.  Consequently, the Court will decline to issue a certificate of appealability.

      DATE:

cc:  Counsel of Record